

Peter A. Romero, Esq.
David D. Barnhorn, Esq.

Matthew J. Farnworth, Esq.

January 9, 2025

**VIA ECF**
Hon. Gary R. Brown
United States District Court
Eastern District of New York
100 Federal Plaza,
Central Islip, New York 11722

      Re:    *Zachary Bishop v. N.H. Ross, Inc., et al.*
              Docket No. 24-CV-04286-GRB-LGD

Dear Judge Brown:

      This firm represents the Plaintiff, Zachary Bishop, in the above-referenced matter brought against Defendants N.H. Ross, Inc. and Neal Ross, for alleged violations of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the Fair Labor Standards Act ("FLSA"), and the New York Labor Law ("NYLL").  Specifically, Plaintiff brings claims for disability discrimination under the ADA and NYSHRL, and for failure to pay timely wages under the FLSA and NYLL as Plaintiff was paid on a bi-weekly or semi-monthly basis. D.E. 1.  Through early mediation, the parties have reached a resolution of this action.  Accordingly, Plaintiff now submits this motion for approval, pursuant to Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement.  The parties' proposed Executed Settlement Agreement (the "Agreement") is attached as Exhibit A.

## Procedural History

      On June 17, 2024, Plaintiff filed his Complaint in this action. D.E. 1.  Defendants filed a request for a pre-motion conference seeking permission to file a motion to dismiss on August 16, 2024. D.E. 6.  Subsequently, on August 26, 2024, the Court denied the request without prejudice for renewal after mediation and referred the matter to the EDNY mediation panel.  The parties then held an EDNY mediation with mediator Barry Peek on November 13, 2024, which resulted in a tentative settlement.  Thereafter, the parties drafted their formal settlement agreement, which has been fully executed, and is attached hereto as Exhibit A.

      The settlement agreement between the Plaintiff and the Defendants provides for payment of a gross sum of $40,000.00, inclusive of attorneys' fees and costs.  Pursuant to the Agreement, Plaintiff will receive a total sum of $26,092.29, and Plaintiff's counsel will receive a total sum of $13,907.71, consisting of $13,046.15 for attorneys' fees (i.e. 1/3 of

the net settlement amount after deducting costs from the gross settlement amount) and $861.56 for litigation costs.

### The Court Should Approve the Settlement Agreement as Fair and Reasonable

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arms'-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Defendants – a corporation and its owner and operator – operate a plumbing and HVAC installation, repair, and maintenance company in Middle Island, New York. Plaintiff asserts Defendants employed him as a plumber from in or around June 2020 through March 3, 2023, where he was primarily responsible for repairing and maintaining customer plumbing systems across long island. Plaintiff alleges that Defendants failed timely pay Plaintiff on a weekly basis, resulting in the regular late payment of wages, in violation of the FLSA and NYLL.

Critically, the parties have several key disputes that impact liability and damages. Defendants contend that Plaintiff was paid correctly for his hours worked, and that his payments were not late under the FLSA. Defendants strenuously argue that Plaintiff was paid properly. Plaintiff vigorously rejects Defendants arguments and argues that pursuant to the prompt payment provisions of both the FLSA and NYLL, his first week of pay each pay period was paid late, and he is thus entitled to liquidated damages equal to the amount of each late payment of wages. Further, the case law on the timely payment provisions of the FLSA and the NYLL are not fully settled, which could drastically change the viability of Plaintiff's claims and Defendants' defenses. Each of these disputes will turn primarily on the credibility of the records that exist and that of the parties, and the resolution of these disputes would have a significant outcome on liability and Plaintiff's damages at trial.

Plaintiff calculated his damages in order to assess his best possible recovery in this litigation. Making all reasonable assumptions in his favor, according to Plaintiff's calculations, Plaintiff's best potential recovery under the FLSA at trial amounts to $39,233.33 for FLSA liquidated damages. Thus, under the current Agreement, Plaintiff will recover all of his FLSA damages

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in formal written and document discovery, and depositions of Plaintiff, Defendants, and likely several non-party witnesses. Defendants would have likely renewed their request for a pre-motion conference and sought the dismissal of the action in its entirety. This settlement also avoids potential partial motions for summary judgment and a time consuming and risky trial, which could result in a months' or years' long delay to obtaining a potential recovery for the Plaintiff, even if he is successful, and avoids potentially facing future appeals. Notably, a trial in this lawsuit is particularly risky because the case law has not been fully settled on this issue under either the FLSA prompt payment provision or the NYLL timely payment provisions. As a result, in light of Defendants' defenses, there is a risk that Plaintiff could ultimately receive little or nothing at all under the FLSA. Thus, by settling at this stage, Plaintiff ensures that he will receive a recovery in this matter.

Accordingly, although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the significant possibility that he could receive lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Thus, assuming this settlement is approved, Plaintiff will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. In this matter, the parties release in the Agreement contains a mutual general release of claims to ensure finality of disputes between the parties. Courts in this Circuit have repeatedly permitted a mutual general release in non-class wage and hour cases like the parties' settlement agreement, with experienced counsel, and where the Court can be assured that the rights of plaintiffs are sufficiently protected. See Zai You Zhu v. Meo Japanese Grill & Sushi, Inc., 2021 U.S. Dist. LEXIS 193605, at *11-12 (E.D.N.Y. Oct. 6, 2021); Rosario v. Structural Preservation Systems, LLC, 2019 WL 1383642, at * 3 (S.D.N.Y. Mar. 27, 2019) ("general releases may be permitted where the plaintiffs are no longer employed by defendants, the releases were negotiated by competent counsel for both sides and the releases are mutual"); Khan v. Young Adult Institute, Inc., 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018) ("Broad general releases of non-FLSA claims are acceptable where the release of claims is binding on both plaintiffs and defendants because the mutuality cures the "concern[ ] that the waiver unfairly benefits only Defendants.") (quoting Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 2016 WL 922223 at *2 (S.D.N.Y. Feb. 3, 2016); Snead v. Interim HealthCare of Rochester, Inc., 286 F.Supp.3d 546, 556 (W.D.N.Y. 2018) ("In the instant matter, Plaintiff is no longer an employee of Defendant, and the release at issue is mutual...Furthermore, because this case is not a class action, at least one of the dangers posed by an overbroad release — that it would bind class members who had no bargaining power concerning the settlement terms — is not present here...Therefore, under the circumstances of this case, the Court finds that the mutual waiver and release provisions are a fair and reasonable outcome of balanced negotiations, occurring over several months, which will bring closure to both sides.); Burgos v. Northeast Logistics, Inc., 2018 WL 2376481, at * (E.D.N.Y. Apr. 26, 2018) (holding that approval of a mutual general release in the non-class-action context is permissible, where the plaintiff is no longer employed by the defendant, and where the

release includes "reciprocity of parties" (*i.e.*, where the array of persons covered by the waiver was symmetrical)); Weidong Li v. Ichiban Mei Rong Li Inc., 2017 WL 1750374, (N.D.N.Y. May 5, 2017) (concluding mutual general release, where employment relationship was already terminated, reflected the parties' "obvious desire [] to end their relationship without the specter of further disputes. Such an intention is entirely consistent with the goal under the FLSA of achieving a fair and just resolution."); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("A general release of the kind proposed in this case, with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure" and noting a mutual general release, like the one negotiated between Plaintiffs and Defendant, "will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes."); Chauca v. Abitino's Pizza 49th Street Corp., 2016 WL 2647603, at *1-2 (S.D.N.Y. June 29, 2016) (approving mutual general release in FLSA settlement); Weng v. T&W Restaurant, Inc., 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (approving mutual general release in FLSA settlement, but denying approval of agreement for other reasons); Cionca v. Interactive Realty, LLC, 2016 WL 3440554, at *3-4 (S.D.N.Y. June 10, 2016) (same); Lopez v. Poko-St. Ann L.P., 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (citing Souza v. 65 St. Marks Bistro*, 2015 WL 727174 7, at *5 (S.D.N. Y. Nov. 6, 2015); and Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016)) (denying settlement due to, *inter alia,* the general release being overly broad and not mutual, but holding that the release would be approved if revised to be mutual)); Lola, 2016 WL 922223, at *2 (quoting Souza, 2015 WL 7271747, at *5) (approving settlement agreement with mutual releases and noting "mutual release of claims is acceptable because it 'will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes.'").  Here, Plaintiff is no longer employed by the Defendants and has alleged claims under the ADA, NYSHRL, and the NYLL.  As a result, the parties' mutual general release will permit Plaintiff and Defendants to resolve all disputes between them and move forward with a clean slate.

Additionally, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181).  While the Agreement does include a mutual non-disparagement provision, the mutual non-disparagement provision provides Plaintiff and Defendants with the ability to provide truthful statements about their experience litigating this action, about Plaintiffs' FLSA claims in this action, and about the resolution of this action.  Thus, the parties' agreed upon mutual non-disparagement provision contains the required carve out provision permitting parties to make truthful statements about this lawsuit and their experiences litigating this matter.  Ramos Pelico v. PGNV, LLC, 2019 WL 2710176, at *3 (S.D.N.Y. June 28, 2019) (approving non-disparagement clause where "the non-disparagement clause is mutual and includes an explicit carve-out for truthful statements.  The Agreement provides that the

mutual non-disparagement clause 'shall not apply to truthful statements made by any of the Parties regarding their experiences in the Litigaution and/or the underlying facts of any claim or defense.'") As a result, there are no terms in the agreement that would offend the dictates of Cheeks v. Freeport Pancake House, Inc.

Additionally, the reasonableness of this settlement is also assured by the involvement of a mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Here, the parties engaged in contentious negotiations requiring the assistance of a mediator at a formal mediation session. Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

**The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336). In this case, the portion of the settlement amount attributable to attorneys' fees is $13,046.15, or one-third of the net settlement amount after deducting for litigation costs.

Notably, while Courts may now award attorneys' fees in amounts greater than one-third of the total settlement sum, plus costs, Fisher v. SD Prot. Inc., 948 F.3d 593 (2d Cir. 2020), Courts have traditionally held that approval of attorneys' fees of 1/3 of the settlement sum, plus costs, is reasonable and routinely approve such terms in settlement agreements. Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases); McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Oxley v. Excellent Home Care Servs., LLC, 2020 WL 589581, at *3 (E.D.N.Y. Jan. 8, 2020), report and recommendation adopted, 2020 WL 401772 (E.D.N.Y. Jan. 23, 2020) (citing Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016)) (noting "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable" in FLSA settlements and awarding plaintiff's counsel a fee of 1/3 of the net settlement after costs, plus an award of costs); Yong Yuan Wang v. Mandarin Glen Cove, Inc., 2019 WL 5695910, at *2-3 (E.D.N.Y. Sept. 30, 2019) (citing Romero, 2016 WL 1369389, at *2)

(same); Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Courts have held that a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Thus, Plaintiffs' counsel's requested fees of one-third of the net settlement sum after deducting for litigation costs is certainly reasonable.

Lastly, Plaintiffs' counsel seeks reimbursement for $861.56 in advanced litigation costs, representing $405.00 for the filing fee for the Complaint, $156.56 for the costs of service, and $300.00 for the mediation costs. Proof of payment of same is annexed hereto as Exhibit B, and on the Docket at D.E. 1.

Accordingly, Plaintiff's counsels' requests for attorneys' fees in the amount of $13,046.15 and expenses in the amount of $861.56 should be approved as reasonable.

In light of the foregoing, the parties respectfully request that the Court approve the parties' settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement. We thank the Court for its consideration of these requests.

Respectfully submitted,

__/s/ Matthew J. Farnworth, Esq.__
MATTHEW J. FARNWORTH, ESQ.

C:  All Counsel of Record *via* ECF